UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL COLEMAN,

    Plaintiff,                             Civil Action No. 08-14534

v.                                          HON. LAWRENCE P. ZATKOFF
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

       Plaintiff Carol Coleman brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## **PROCEDURAL HISTORY**

       On September 20, 2005, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging an onset of disability date of June 1, 2004 (Tr. 43-45, 85-87). After the initial denial of her claims, Plaintiff filed a request for an administrative hearing, held on June 3, 2008 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Roger Thomas (Tr. 399). Plaintiff, represented by attorney Donald Shiffman, testified, as did Mary Williams, a Vocational Expert ("VE"). On

July 24, 2008, ALJ Thomas found that Plaintiff was able to perform her past relevant work as a substitute elementary school teacher (Tr. 15-16). On October 15, 2008, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review on October 24, 2008.

## BACKGROUND FACTS

Plaintiff, born September 28, 1956, was age 51 when the ALJ issued his decision (Tr. 16, 43). She completed two years of college and worked formerly as an elementary school instructor and home care giver (Tr. 100, 104). Plaintiff's application for benefits claims disability as a result of a lower back injury and osteoarthritis of the right foot (Tr. 99).

### A.     Plaintiff's Testimony

Plaintiff, right handed, testified that she was 5'2-1/2 and weighed 150 pounds (Tr. 405). She reported that she currently lived in her own home with her daughters, aged 32 and 12, adding that the older daughter had a disability (Tr. 405). Plaintiff indicated that although her younger daughter lived with her, the girl's father performed most parenting tasks (Tr. 406). Plaintiff denied all laundry chores, stating further that her cooking was limited to "light meal" or snack preparation (Tr. 406-407). She denied drinking, but admitted that she smoked daily (Tr. 407-408). Plaintiff reported that she drove only minimally and was unable to walk more than three quarters of a block due to back problems (Tr. 407-408). Plaintiff also noted that she had received both cortisone injections and acupuncture for carpal tunnel syndrome ("CTS"), adding that she used wrist splints at night (Tr. 409). She claimed that surgery had been recommended in the past for CTS (Tr. 409). Plaintiff testified that she had also been treated for a cataract (Tr. 410).

Plaintiff denied working since 2004, but admitted that she received income in 2007 for caring for her elderly aunt (Tr. 410). She reported that she gave the funds allotted for her aunt's care to extended family members who contributed to the elderly woman's care (Tr.

411-412). Plaintiff testified that she had experienced back pain since an August, 2003 car accident, adding that as a result of her injury, she required physical therapy, medication, heat treatment, and back and neck braces (Tr. 412-414). She also reported that a 1994 right foot injury created intermittent discomfort (Tr. 414-415).

Plaintiff noted that in 2005 she was diagnosed with diabetes and had suffered from ear and jaw pain since 2004 (Tr. 415). She indicated that she took medication for diabetes, high blood pressure, anxiety, depression, and sleep disturbances (Tr. 418). Noting that she paid for her own medical visits, Plaintiff reported that financial limitations required her to choose between eye treatment and seeking help for depression (Tr. 419-420). She alleged that symptoms of depression included mood swings, memory lapses, and loss of appetite (Tr. 419-420). Plaintiff also testified that pain medication created stomach problems (Tr. 422).

In response to questioning by her attorney, Plaintiff testified that back problems prevented her from sitting or standing for more than 20 minutes at one time (Tr. 416-417). Acknowledging that she used to be an "avid" reader, she indicated that pain now prevented her from reading, bowling, and traveling (Tr. 421). Plaintiff alleged partial relief by elevating her legs and using a heating pad (Tr. 422). She reported that her condition obliged her to take anywhere between two and five rest periods per day (Tr. 423).

   B.   **Medical Evidence**

   **1. Treating Sources**

In August, 2003, Plaintiff sought emergency treatment after sustaining injuries in a car accident (Tr. 342). Plaintiff reported left shoulder and left-sided neck pain along with mid-back pain (Tr. 342). X-rays taken "showed no evidence of dislocation or fracture" (Tr. 343). Plaintiff was diagnosed with muscle strain and discharged in stable condition (Tr.

243). Dr. Dawit Teklehaimanot, D.O. observed that Plaintiff "was able to get on and off the examining table without any difficulties," but exhibited "severe tightness of the neck" and range of motion limitations (Tr. 358). Dr. Teklehaimanot recommended "aggressive physical therapy" (Tr. 359). In October, 2003, Plaintiff exhibited an improved range of motion in the neck and cervical and lumbar spine (Tr. 360). The same month, neurologist Abelardo G. Contreras, M.D., noting Plaintiff's history of diabetes and hypertension, observed normal muscle tone and gait (Tr. 362-363). In November, 2003, MRIs of the sacro-lumbar and cervical spine showed a disc herniation at L4/L5 but otherwise normal results (Tr. 170, 356).

In March, 2004, orthopedic surgeon Stefan Glowacki, diagnosing Plaintiff with whiplash and "possible partial tear of the rotator cuff," advised her to "continue physical therapy, exercises, pain medication, and [a] muscle relaxant" (Tr. 353). The same month, Dr. Teklehaimanot advised "a more aggressive home exercise program" (Tr. 351). In May, 2004, Plaintiff reported that her neck and shoulder pain was improved (Tr. 348).

The same month, Saul Weingarden, M.D. demonstrated a stretch technique for home use (Tr. 378). He noted that Plaintiff continued to work as a substitute teacher and was "also self-employed doing mortgage and tax type work," adding that Plaintiff "continue[d] to work" despite the August, 2003 injury (Tr. 376). In June, 2004, Dr. Teklehaimanot, observing that a recent EMG had been "unremarkable," and that Plaintiff demonstrated a full range of motion, recommended that she take Tylenol #3 as needed for continued complaints of neck and shoulder pain (Tr. 346). Treating notes from July, 2004 characterize Plaintiff's back pain as "chronic" (Tr. 277). The following month, Abelardo G. Contreras, M.D., noting that MRIs of the cervical and lumbar spine showed no pathology, concluded that Plaintiff had "reached a plateau in her condition" (Tr. 345). Dr. Contreras opined that "[s]hort courses of

physical therapy with emphasis on [stretching] may be of help" (Tr. 345). Also in August, 2004, Dr. Weingarden found that Plaintiff was "doing better" as a result of home exercises (Tr. 373). The following month, Plaintiff reported relief from a Lidoderm Patch (Tr. 371).

In October, 2004, Dr. Weingarden noted that Plaintiff showed improvement but still complained of "mild to moderate" sacro-lumbar pain (Tr. 369).  In November, 2004, Dr. Weingarden composed an opinion letter on behalf of Plaintiff's request for continued insurance coverage, stating that Plaintiff "continue[d] to have pain" as a result of the August, 2003 accident (Tr. 367).

In October, 2006, a psychiatric evaluator assigned Plaintiff a GAF of 56[1] (Tr. 334). The following month, psychotherapy progress notes show that Plaintiff currently took Zoloft for depression (Tr. 333).

### 2.  Consultive Sources

In September, 2004, Jeffrey Edwin Middeldorf, D.O. examined Plaintiff on behalf of her insurance provider (Tr. 381).   Plaintiff reported that she had not worked since June, 2004 (Tr. 382). Dr. Middeldorf, opining that it was "very difficult to get a straight answer regarding her employment situation," noted that Plaintiff complained of ongoing headaches and "constant" neck and back pain (Tr. 382). Dr. Middeldorf also observed that Plaintiff

---

[1] Plaintiff argues that the handwritten evaluator's notes state that she had a GAF of *50*, rather than 56. *Plaintiff's Brief, Docket #10* at 9. In an abundance of fairness, the Court will assume that Plaintiff received a 50, which suggests a lower level of mental function. A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* ) (4th ed.2000). GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

"arose without hesitation and without support" and did not need a cane or walker (Tr. 384). Based on his examination, he concluded that he "[did] not have an objective basis to disable or restrict her from occupational activities" (Tr. 386). He found further that Plaintiff was not "in need of any further therapeutic intervention to her spine from [the] accident" (Tr. 386). A December, 2005 Residual Functional Capacity Assessment performed on behalf of the SSA determined that based on Plaintiff's medical records, she could lift 20 pounds occasionally and ten pounds frequently; walk, stand, or sit for about six hours per workday; and push and pull in all extremities without limitation (Tr. 222). The Assessment found the absence of postural, visual, communicative, or environmental limitations, but manipulative limitations consisting of a preclusion on overhead reaching (Tr. 223-225). Noting that Plaintiff claimed limitations of "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing," the Assessment concluded that Plaintiff's allegations were "not supported" (Tr. 226).

### C.     Vocational Expert Testimony

VE Mary Williams classified Plaintiff's former work as a home health care aide as semi-skilled at both the heavy and light levels of exertion; companion and chore provider, unskilled/light; and substitute teacher semiskilled and light[2] (Tr. 426). Next, the ALJ posed the following hypothetical limitations to the VE, taking into account Plaintiff's age, education, and work background:

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> "[C]omplaints of low back pain and neck pain after a motor vehicle accident specifically at least. She's had imaging studies for those, and she does have . . . a diagnosis of diabetes treated with oral medications. She's had some conditions that are non-severe, some right ear pain was reported in one record at one point. She's had some cataracts. The right eye has been treated and removed. Left eye is still pending treatment. She's had a right ankle pain . . . brachia strain . . . hypertension, some left shoulder strain as well. There is some complaint[] today of anxiety and depression. The eye doctor [in November, 2006] noted diabetic retinopathy in one entry. It wasn't mentioned in the others. . . . . . Given a light [exertional] range, could a person with those [limitations] do any of the past jobs set out in your report?"

(Tr. 426-427). The VE responded that the hypothetical individual could perform Plaintiff's past relevant work as a companion worker, chore care provider, home care worker, and substitute teacher (Tr. 427). The VE testified further that if the individual were limited to sedentary work and precluded from repetitive gripping as a result of CTS, the individual could not perform any of Plaintiff's past relevant work but could do the work of an inspector (1,900 positions in the regional economy), information clerk (5,000), and surveillance system monitor (1,500)(Tr. 528). The VE stated that if the individual were precluded from production work and/or limited to brief and superficial conduct with the public, the job numbers would remain unchanged (Tr. 429). In response to questioning by Plaintiff's attorney, the VE testified that the inclusion of a sit/stand option would not preclude any of the above-listed jobs, but if required "to be off task twice a day" for an hour "because of elevated pain complaints or effects of medication," the individual would be unable to perform any work (Tr. 430). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 429).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Thomas found that Plaintiff experienced the severe impairments of "myofacial pain of the neck and shoulder muscles on the left side, with muscle spasms; cervicalgia; chronic lumbar strain, with an MRI in November, 2004, showing

a central disc herniation at the L4-5 level; and non-insulin dependent diabetes mellitus" but that none of the conditions met or medically equaled the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 11-13). He found that Plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than a minimal limitation" in Plaintiff's "ability to perform basic mental work activities and are therefore 'non-severe'" (Tr. 12).

The ALJ found that Plaintiff retained the following residual functional capacity ("RFC") for exertionally light work," but was "precluded from performing any overhead tasks with the left upper extremity secondary to her chronic left shoulder area strain" (Tr. 13-14). He concluded that Plaintiff was capable of performing her past relevant work as a substitute elementary school teacher (Tr. 15). Citing the VE's job numbers, the ALJ also found that Plaintiff could do the sedentary work of an inspector, information clerk, and surveillance system monitor (Tr. 15).

The ALJ found Plaintiff's allegations of disability "not credible to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 14). He cited Dr. Middleldorf's October, 2004 findings of a "normal cervical spine" and an unremarkable neck and back study (Tr. 14). The ALJ noted that the same month, Dr. Weingarden found Plaintiff's pain "was 'considerably better' as a result of prescribed exercises and the use of a Lidoderm patch" (Tr. 14). The ALJ also observed that Plaintiff "ha[d] never undergone back surgery, nor ha[d] back surgery been recommended to her" (Tr. 15). Noting that Plaintiff's neck, ankle, eye, back, and CTS conditions had either been resolved or were responding to treatment, the ALJ concluded that her "subjective pain complaints far exceed[ed] the objective medical findings," commenting that none of her physicians had found her disabled (Tr. 15).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Rule 201.14

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that she could perform exertionally light work. *Plaintiff's Brief, Docket #10* at 8-13. Plaintiff, 51 at the time of the administrative decision, argues that under the Medical-Vocational Guidelines, her lack of transferrable skills, combined with the ability to perform only sedentary work, mandates a disability finding. *Id.* at 10-12.

Pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14, a person "restricted to sedentary work who is age fifty to fifty-four, and whose education does not permit direct entry into skilled work, must be found disabled unless he has acquired transferable skills as a result of his past work." *Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 776 (6th Cir. 1987).

Contrary to Plaintiff's contention that she could perform only sedentary work and was thus disabled, substantial evidence generously supports the finding that she was capable of exertionally light work. The ALJ noted that an MRI of the cervical spine "was essentially normal, showing only mild degenerative changes" (Tr. 14). Further, although an MRI of the sacro-lumbar spine showed a disc herniation at L4-5, Plaintiff "has never undergone back

surgery, nor has back surgery been recommended" (Tr. 14-15). Citing Dr. Weingarden's treating notes, the ALJ observed that Plaintiff controlled back pain with exercise and a Lidoderm patch (Tr. 14). The ALJ also noted that Plaintiff demonstrated a "full range of motion of the upper extremities" (Tr. 14). In regard to limitations as a result of CTS, the ALJ found that a June, 2004 EMG "was unremarkable, with no evidence of radiculopathy, neuropathy, or compression mono-neuropathy" (Tr. 15). I agree with the ALJ's finding that a preponderance of the evidence (as opposed to merely substantial evidence) supports the exertional conclusions (Tr. 15).

### B. Mental Impairments

Plaintiff argues briefly that the ALJ erred by omitting depression and anxiety from her severe impairments at Step Two of the administrative sequence. *Plaintiff's Brief* at 9-10. Citing transcript pages 332 through 334 showing treating records created in October, 2006 and August, 2007, she contends that her mental impairments created work related limitations. *Brief* at 9.

At first blush, this argument appears a winner. "[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985) (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). Plaintiff's October, 2006 psychiatric evaluation and use of Zoloft, Celexa, and Klonopin would appear to establish more than *de minimus* non-exertional impairments.

Notwithstanding the Plaintiff's 2006 GAF assessment and her use of Zoloft, the

ALJ's finding that Plaintiff's psychological limitations were non-severe is well-supported and adequately explained. CFR § 416.921(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* The ALJ found that Plaintiff had only "mild" limitations in activities of daily living, noting that she continued to drive, fix light meals, shop, and attend church (Tr. 12). He noted further that the limitations were attributable to neck and back pain rather than mental problems (Tr. 12). Likewise in regard to social functioning, the ALJ found only mild limitations, observing that although Plaintiff alleged that she had "become more isolated of late," she blamed physical pain rather than mental limitations (Tr. 12). The ALJ once again cited Plaintiff's ongoing ability to perform household tasks, drive, and take care of her shopping needs in support of his finding that she experienced only mild concentrational limitations (Tr. 13). Finally, he observed that Plaintiff had not alleged "episodes of decompensation" (Tr. 13).

Additional evidence supports the non-severe finding at Step Two. Treating notes created in October, 2006 (the same month that Plaintiff received the psychiatric diagnosis of depression) indicate that she exhibited normal judgment and orientation as to time, place, and person (Tr. 236). May, 2007 treating records indicating normal "recent and remote memory," (as well as normal judgment and cognitive abilities) contradict Plaintiff's claim of memory problems, suggesting that her psychological impairments were either of short duration and/or well controlled with medication (Tr. 232). Significantly, her September, 2005 application makes no mention of psychological conditions affecting her ability to work

(Tr. 99).

In closing, the Court notes that its recommendation to uphold the administrative decision is not intended to trivialize Plaintiff's legitimate limitations. Nonetheless, the administrative finding that Plaintiff was capable of returning to her former job as a substitute teacher is both procedurally and substantively adequate, and falls well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the

objections.

                                                           s/R. Steven Whalen
                                                           R. STEVEN WHALEN
                                                           UNITED STATES MAGISTRATE JUDGE

Dated:  October 26, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 26, 2009.

                                                           s/Susan Jefferson
                                                           Case Manager